UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION


GENEVIEVE PRESTAGE,

       Plaintiff,                CIVIL ACTION NO. 05-74545

      v.                      DISTRICT JUDGE BERNARD A. FRIEDMAN

JO ANNE B. BARNHART,       MAGISTRATE JUDGE VIRGINIA M. MORGAN
COMMISSIONER OF
SOCIAL SECURITY,

       Defendant.
_____/

## REPORT AND RECOMMENDATION

## I.  Introduction

       This Social Security case comes before the court on the parties' cross-motions for

summary judgment.  For the reasons stated herein, the court recommends that plaintiff's motion

be granted and that the Commissioner's motion be denied.

## II.  Background

       On December 6, 2001, plaintiff filed applications for Social Security Disability Insurance

Benefits (DIB) and Supplemental Security Income (SSI), claiming that she was disabled due to

acute pain in her right side, arms, back and legs, with an onset date of June 1, 1999.  (Tr. 47-49,

-1-

50 62, 480-82)[1]  Plaintiff was 29 years of age when she filed the applications, with a work history

including employment as a press operator, a home care attendant, a gas station attendant, a

cashier, and a restaurant worker.  (Tr. 63, 75-81, 84-85)

The Social Security Administration (SSA) denied the claim on March 29, 2002.  (Tr. 27-

32, 483-86)  Plaintiff then requested a hearing before an administrative law judge (ALJ).  (Tr. 33)

The hearing was held on September 1, 2004, before ALJ B. Lloyd Blair.  (Tr. 509-42)  Plaintiff,

represented by counsel, appeared and testified at the hearing.  The ALJ also took testimony from

a vocational expert (VE).

On November 24, 2004 the ALJ issued a decision denying plaintiff's claim.  (Tr. 14-24)

The ALJ determined that plaintiff had fibromyalgia, carpal tunnel syndrome of the right wrist,

and asthma, and that her impairments were "severe" within the meaning of 20 C.F.R. §§

404.1520, 416.920, but that she did not have an impairment or combination of impairments that

met or equaled any impairment listed in Appendix 1, Subpart P of the Social Security

Regulations.  The ALJ further concluded that plaintiff retained the capacity to perform her past

work as a gas station attendant. Accordingly, the ALJ found that plaintiff was not "disabled"

within the meaning of the Social Security Act.

Following the ALJ's denial of her claim, plaintiff filed a request for review of the ALJ's

decision with the SSA's Appeals Council.  (Tr. 500-08)  The Appeals Council denied the request

---

[1]Plaintiff originally alleged an onset date of May 15, 2001.  She subsequently amended
the date to June 1, 1999.

-2-

on November 15, 2005.  (Tr. 6-8)  The ALJ's decision thus became the final decision of the

Commissioner.

On December 1, 2005, plaintiff filed suit for review of the Commissioner's decision

pursuant to 42 U.S.C. § 405(g).  As noted above, the parties have filed cross-motions for

summary judgment.  Plaintiff claims in her motion that the Commissioner's disability

determination is not supported by substantial evidence.  She contends primarily that the ALJ

erred in concluding that her allegations regarding her pain and limitations were not totally

credible.  The Commissioner contends in her motion that the decision is supported by substantial

evidence and should thus be affirmed.

## III.  Legal Standards

### A.  Disability Evaluation

A person is "disabled" within the meaning of the Social Security Act "if he is unable to

engage in any substantial gainful activity by reason of any medically determinable physical or

mental impairment which can be expected to result in death or which has lasted or can be

expected to last for a continuous period of not less than twelve months." 42 U.S.C. §

423(d)(1)(A); see also 42 U.S.C. § 1382c(a)(3)(A).  Further,

> an individual shall be determined to be under a disability only if his
> physical or mental impairment or impairments are of such severity
> that he is not only unable to do his previous work but cannot,
> considering his age, education, and work experience, engage in any
> other kind of substantial gainful work which exists in the national
> economy, regardless of whether such work exists in the immediate
> area in which he lives, or whether a specific job vacancy exists for
> him, or whether he would be hired if he applied for work.

-3-

42 U.S.C. § 423(d)(2)(A), see also 42 U.S.C. § 1382c(a)(3)(C)(i).  The claimant bears of the

burden of proving that he is disabled.  Foster v. Halter, 279 F.3d 348, 353 (6th Cir. 2001).

A five-step process is used to evaluate DIB and SSI claims.  20 C.F.R. § 404.1520, 20

C.F.R. § 416.920.   As discussed in Foster, Id. at 354 (citations omitted), this process consists of

the following:

> The claimant must first show that she is not engaged in substantial
> gainful activity.  Next the claimant must demonstrate that she has a
> "severe impairment."  A finding of "disabled" will be made at the
> third step if the claimant can then demonstrate that her impairment
> meets the durational requirement and "meets or equals a listed
> impairment.  If the impairment does not meet or equal a listed
> impairment, the fourth step requires the claimant to prove that she
> is incapable of performing work that she has done in the past.
> Finally, if the claimant's impairment is so severe as to preclude the
> performance of past work, then other factors, including age,
> education, past work experience, and residual functional capacity
> must be considered to determine if other work can be performed.
> The burden shifts to the Commissioner at this fifth step to establish
> the claimant's ability to do other work.[2]

**B.  Standard of Review**

Plaintiff seeks review of the Commissioner's decision pursuant to 42 U.S.C. § 405(g),

which provides, in part:

> Any individual, after any final decision of the Commissioner of
> Social Security made after a hearing to which he was a party,
> irrespective of the amount in controversy, may obtain a review of
> such decision by a civil action commenced within sixty days after
> the mailing to him of notice of such decision or within such further
> time as the Commissioner of Social Security may allow.

---

[2]Foster involved a claim for DIB, not SSI.  However, the analysis is the same regardless
of whether the claim in question is one for DIB or SSI.

Judicial review under § 405(g) is limited to a determination of whether the ALJ's findings are supported by substantial evidence and whether the ALJ applied the proper legal standards. Brainard v. Secretary of HHS, 889 F.2d 679, 681 (6th Cir. 1989); Key v. Callahan, 109 F.3d 270, 273 (6th Cir. 1997). The Sixth Circuit stated in Brainard, 889 F.3d at 681, that "[s]ubstantial evidence is more than a mere scintilla of evidence but less than a preponderance and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Further, "the decision of an ALJ is not subject to reversal, even if there is substantial evidence in the record that would have supported an opposite conclusion, so long as substantial evidence supports the conclusion reached by the ALJ." Key, 109 F.3d at 273.

**IV.  Analysis**

The ALJ rendered findings favorable to plaintiff at the first two steps of the five-step disability determination process. At step three, the ALJ concluded that plaintiff's impairments did not meet or equal a listed impairment. Plaintiff raises no objections to the ALJ's step three finding. At step four, the ALJ rendered the following assessment of plaintiff's Residual Functional Capacity (RFC):

> The claimant has the residual functional capacity to perform light work, with restrictions in lifting a maximum of 20 pounds and frequently lifting 10 pounds; standing, walking, and/or sitting six hours in an eight hour work day; no use of ladders, scaffolds, or ropes; only occasional use of ramps or stairs; only occasional stooping, crouching, kneeling, or crawling; and no use of pneumatic, torque, or power tools. The claimant should also avoid concentrated exposure to vibrations.

(Tr. 23)  The VE testified that an individual with such an RFC could perform plaintiff's past work as a gas station attendant, both as she performed it and as it is performed in the national economy.  (Tr. 540)  Based on the testimony of the VE, the ALJ concluded that plaintiff was capable of performing her past work as a gas station attendant and, therefore, that she was not disabled.  Thus, the ALJ did not proceed to step five.

The VE also testified that if plaintiff's testimony regarding the extent of her pain and limitations was fully credible, she could not perform her past relevant work or any other work in the national economy.  (Tr. 540-41)  Therein lies the essence of this case – plaintiff's credibility. As discussed further below, where a claimant alleges that she is disabled due to fibromyalgia, the claimant's credibility is a significant, perhaps the most significant, component of the disability determination.  Such is the case in this matter.

An ALJ's findings based on the credibility of the applicant "are to be accorded great weight and deference."  Walters v. Commissioner of Social Sec., 127 F.3d 525, 531 (6th Cir. 1997).  However, credibility assessments are not insulated from judicial review.  Despite the deference due, such a determination must nevertheless be supported by substantial evidence. Thus, the court must review the medical and non-medical evidence in the record, including plaintiff's testimony and reports regarding her Activities of Daily Living (ADLs), and determine whether the ALJ was justified in concluding that her allegations and testimony were not fully credible.

The regulations provide that a claimant's statements regarding her "pain or other symptoms will not alone establish that [she is] disabled[.]" 20 C.F.R. § 404.1529(a); see also

-6-

Walters, supra, 127 F.3d at 531.  Rather, "there must be medical signs and laboratory findings which show that you have a medical impairment(s) which could reasonably be expected to produce the pain or other symptoms alleged and which, when considered with all of the other evidence...would lead to a conclusion that you are disabled."  20 C.F.R. § 404.1529(a).  The Sixth Circuit has developed a two-prong test for evaluating a claimant's assertions of disabling pain:

> First, we examine whether there is objective medical evidence of an underlying medical condition.  If there is, we then examine: (1) whether objective medical evidence confirms the severity of the alleged pain arising from the condition; or (2) whether the objectively established medical condition is of such a severity that it can reasonably be expected to produce the alleged disabling pain.

Walters, 127 F.3d at 531 (citations omitted).

Where, as here, the claimant alleges to be disabled primarily due to pain resulting from fibromyalgia, the two-part test set forth above is particularly difficult to apply.  Fibromyalgia, by nature, defies objective assessment.  Nonetheless, numerous courts, including the Sixth Circuit, have recognized that fibromyalgia can be a disabling condition.  See Preston v. Secretary Of Health and Human Servs., 854 F.2d 815, 817 (6th Cir. 1988); see also Green-Younger v. Barnhart, 335 F.3d 99, 108 (2d. Cir. 2003); Harman v. Apfel, 211 F.3d 1172, 1179-80 (9th Cir. 2000).  However, judicial review of cases involving the condition remains problematic:

> Fibromyalgia is an 'elusive' and 'mysterious' disease.  It has no known cause and no known cure.  Its symptoms include severe musculoskeletal pain, stiffness, fatigue, and multiple acute tender spots at various fixed locations on the body.

-7-

The presence of these tender spots are the primary diagnostic
indicator of the disease.  There is no laboratory test for the
disease's presence or severity.  Physical examinations usually yield
normal findings in terms of full range of motion, no joint swelling,
normal muscle strength, and normal neurological reactions.

Because of the nature of fibromyalgia and its manifestations,
application of the usual disability analysis is difficult.  The first
alternative test under the second prong of *Duncan* – medical
evidence confirming the severity of the alleged pain – almost never
exists.

Analysis is also hampered under the second alternative test – the
medical condition is of such severity that the alleged pain can
reasonably be expected to occur.  In most cases, the analysis under
this second alternative test will consist of diagnostic findings
confirming the severity of the impairment and the opinion of a
physician as to limitations that pain caused by such severity will
impose.  Since the presence and severity of fibromyalgia cannot be
confirmed by diagnostic testing, the physician's opinion must
necessarily depend upon an assessment of the patient's subjective
complaints.

This places a premium, therefore, in such cases on the assessment
of the claimant's credibility.  Although the treating physician's
assessment can provide substantial input into this credibility
determination, ultimately, the ALJ must decide, given the factors
set out in the regulations, if the claimant's pain is so severe as to
impose limitations rendering her disabled.  For purposes of judicial
review, the ALJ's articulation of the reasons supporting his
credibility findings becomes very important.

Swain v. Commissioner of Social Security, 297 F.Supp.2d 986, 990 (N.D.Ohio 2003).

As is to be expected in such a case, there is little objective medical evidence in the record

to substantiate plaintiff's claim that she suffers pain of disabling severity.  MRIs of plaintiff's

spine have shown mild posterior disc bulging and early degenerative changes, and a nerve

conduction study performed on plaintiff's right upper extremity showed mild carpal tunnel

-8-

syndrome.  (Tr. 163-64, 176, 282)  However, every other diagnostic test she has undergone has

yielded normal results.  Thus, accepting that the diagnosis of fibromyalgia constitutes "objective

evidence" of an "underlying medical condition" for purposes of the first prong of the two-part

test set forth in Walters, supra, 127 F.3d at 531, the objective medical evidence does not confirm

the severity of the alleged pain.  Rather, assessment of plaintiff's credibility necessarily rests

upon factors other than the objective medical evidence.  Given the nature of fibromyalgia, it is, as

the court noted in Swain, critical that the ALJ carefully consider the evidence in the record,

including evidence of the claimant's ADLs, the treatment(s) the claimant has received, and the

medications the claimant takes or has taken, in assessing the claimant's credibility and to

articulate the basis for the credibility determination.  Though an ALJ's credibility finding is

entitled to deference and the court is loathe to disturb such a finding upon a cold written record,

the court finds, for the reasons set forth below, that the ALJ's credibility assessment in this

matter is not supported by substantial evidence.

        First, in concluding that plaintiff's allegations were not entirely credible, the ALJ relied

heavily on the fact that there was little or no objective evidence in the record to substantiate

plaintiff's complaints of disabling pain.  Again, that is to be expected with a claimant who suffers

from fibromyalgia and is not a legitimate basis for discrediting plaintiff's allegations and

testimony.  See Green-Younger, supra, 335 F.3d at 109 (quoting Sarchet v. Chater, 78 F.3d 305,

307 (7th Cir. 1996))("Hence, the absence of swelling joints or other orthopedic and neurologic

deficits 'is no more indicative that the patient's fibromyalgia is not disabling than the absence of

a headache is an indication that a patient's prostate cancer is not advanced'").  The ALJ's heavy

reliance on the medical record substantially undermines his credibility determination.

The ALJ also determined that plaintiff's ADLs undercut her claim of disabling

symptoms:

> The undersigned finds the claimant has described daily activities of
> living which are not limited to the extent one would expect, given
> the complaints of disabling symptoms and limitations.  The
> claimant has reported she is able to care for her two children, cook,
> and do laundry.  The claimant also reported she enjoys fishing and
> last went fishing in a boat for several hours in July, 2004, where
> she was able to cast her own rod.  These activities of daily living
> are not indicative of someone who is totally disabled and unable to
> work.

(Tr. 22)  The ALJ further noted that plaintiff did light housework, shopped for herself and her

two children, and enjoyed reading, watching television, visiting with her family, and taking her

children swimming in the summer.  (Tr. 21)

The ALJ's discussion of plaintiff's ADLs is misleading, at best.  Plaintiff did indeed

report that she is capable of doing some cooking, light housework, and shopping.  However, she

reported that she has substantial difficulties performing these activities.  Plaintiff reported that

she cooked only "one-step" meals or other meals that her kids could assist her with, and that her

mother, with whom she resided, cooked for her and her kids frequently.  (Tr. 93)  Further, she

reported that could only do only 10 to 20 minutes of house work at a time before she needed to

stop and rest, and that her mother did the majority of the housework.  (Tr. 94)  Plaintiff also

reported that she could shop for food only with her mother's assistance, that her mother would

load and unload the cart, and that her mother would lift any heavy items into the car for plaintiff.

-10-

Id. As the ALJ noted, plaintiff did report that she took care of her two children. However, the ALJ failed to mention that the children were 13 and 11 years of age at the time of hearing, not infants or toddlers who would require substantial assistance with grooming, dressing, and other such necessities. Indeed, in reporting that she took care of her two children, plaintiff added that she was "grateful" that they were "old enough to dress, shower, and amuse themself [sic]," suggesting that her children were, in large part, able to care for themselves. (Tr. 96) Further, in the court's view, reading, watching television, and visiting with family do not in any way contradict plaintiff's assertions of disabling pain. These are sedentary activities that convey little, if anything, about the level of plaintiff's pain or her ability to withstand the rigors of a eight-hour work day, five days per week. Also, plaintiff did indicate that she took her kids swimming and liked to go fishing, but her ability to engage in these activities appears to be extremely limited. Though her statements on the matter are a bit vague, plaintiff suggested that to the extent she could engage in these activities, she could only do so for brief periods of time, perhaps 20 or 30 minutes. Id. Plaintiff certainly did not indicate that she engaged in such activities on a frequent or sustained basis. In sum, even if plaintiff fully engaged in all of the household and recreational activities the ALJ cited in determining that plaintiff's allegations of disabling pain were not entirely credible, the ALJ's determination would be on shaky footing. Several courts have recognized that the ability to wash dishes, do laundry, prepare dinner, or engage in other such activities does not, as a general matter, undermine a claimant's assertions of disabling pain and limitations. See, e.g., Zurawski v. Halter, 245 F.3d 881, 887 (7th Cir. 2001)("While the ALJ did list Zurawski's daily activities, those activities are fairly restricted

(e.g., washing dishes, helping his children prepare for school, doing laundry, and preparing dinner) and not of a sort that necessarily undermines or contradicts a claim of disabling pain"); see also, e.g., Draper v. Barnhart, 425 F.3d 1127, 1131 (8th Cir. 2005)("...Draper's activities of daily living involved some light exertional activities, such as household chores, laundry, grocery shopping, mowing, and other chores.  The fact that Draper tries to maintain her home and does her best to engage in ordinary life activities is not inconsistent with her complaints of pain, and in no way directs a finding that she is able to engage in light work").  Given the evidence in the record that plaintiff performs these activities on a significantly limited basis and/or with great difficulty, the ALJ's conclusion that plaintiff's ADLs are inconsistent with her allegation of disabling pain cannot be sustained.

        The ALJ's credibility determination is beset with other infirmities as well.  The ALJ noted that "[w]hile the record indicates the claimant has received various forms of treatment for the allegedly disabling symptoms, which would normally weigh somewhat in her favor, the record also reveals that the treatment has been generally successful in controlling these symptoms."  (Tr. 21)  The ALJ did not point to any evidence in the record indicating that plaintiff's treatments have been "generally successful" in controlling her fibromyalgia-related symptoms, and the court has found none.  Thus, the ALJ's statement as to the effects of the treatment plaintiff has undergone lacks any basis in the record.

        The ALJ also stated that plaintiff attempted physical therapy on two separate occasions to alleviate her fibromyalgia symptoms, but that she "was discharged on both occasions for failing to complete the entire course of prescribed therapy."  (Tr. 22)  Plaintiff was first admitted to

physical therapy on January 13, 2003.  On March 4, 2003, the physical therapist wrote a memo to

Dr. Mark Gerold, one of plaintiff's treating physicians, stating that plaintiff appeared for six

treatment sessions, but that she "hasn't shown for her next 3 consecutive appointments so she

was discharged from outpatient PT."  (Tr. 203)  Plaintiff made a hand-written notation on that

memorandum, dated April 4, 2003, in which she stated that she did not make those appointments,

that she did not know the appointments had been made, and that she had not even been informed

that any additional treatments sessions had been "approved," which the court takes to mean

approved by her insurer.  Id.  Further, there is a second discharge memo in the record, which is

dated March 4, 2003 and appears to cover the same treatment sessions.  The memo is identical to

the first memo in all respects except for the final two sentences, which provide, in contradiction

to the first memo, the following: "Pt's treatment was put on hold due to not having further

insurance authorization.  Pt did not receive any information regarding the Pt's authorization

status since her last treatment so she was discharged from PT on 3/4/03."  (Tr. 347)  Moreover,

the physical therapy "Referral Authorization Form" filled out by Dr. Gerold, dated December 19,

2002, indicates that plaintiff was indeed approved for six visits.  (Tr. 213)  Thus, there is a

discrepancy in the record as to whether plaintiff willfully failed to appear for three treatment

sessions, and the evidence tends to corroborate plaintiff's version of events.  Plaintiff again

underwent physical therapy in May of 2003.  The discharge summary states that she "canceled

her last two appointments," but also indicates that plaintiff "spoke w/ her doctor and decided that

she would like to discontinue therapy at this time.  Pt c/o increased pain after treatment and

difficulty performing ADL."  (Tr. 310)  There is no indication in the memo that plaintiff was

-13-

discharged for willful failure to complete the prescribed course of treatment, as indicated by the ALJ. Rather, it appears that the therapy was exacerbating plaintiff's pain and that she discontinued the treatments after consulting with her physician. Thus, while failure to comply with a prescribed course of treatment may be a valid consideration in assessing a claimant's credibility, the record does not support the ALJ's statement that plaintiff was discharged from physical therapy on two occasions due to a willful failure to participate.[3]

In sum, the court finds that the ALJ's credibility determination is not supported by substantial evidence. Recognizing that such determinations are generally entitled to deference, the court does not lightly reach such a conclusion. However, the credibility assessment in this matter, as discussed above, is based upon improper factors and a skewed view of the record. The ALJ relied heavily upon the fact that there was no objective medical evidence in the record to substantiate plaintiff's complaints when a lack of such evidence is entirely consistent with a diagnosis of fibromyalgia. The Social Security regulations provide that "we will not reject your statements about the intensity and persistence of your pain ... solely because the available objective medical evidence does not substantiate your statements." 20 C.F.R. § 404.1529(c)(2). This admonition is particularly apt where, as here, the claimant suffers from fibromyalgia. Further, the ALJ's discussion of plaintiff's ADLs was, in the court's view, misleading, and

_____

[3]The ALJ also noted, in assessing plaintiff's credibility, that plaintiff reported problems with asthma, but testified that she continued to smoke in spite of the condition and that she took no medication for her condition. (Tr. 22) Plaintiff has not claimed that her asthma is a disabling condition or that it even significantly contributes to her alleged inability to work. Thus, the court does not see how plaintiff's continued smoking and failure to take medication for asthma impacts upon the credibility of her assertions of disabling pain.

-14-

substantially overstated the extent and nature of plaintiff's activities.  The ALJ also asserted that

plaintiff had responded well to treatment.  There is no record support for that assertion.  In

addition, the ALJ also stated that plaintiff was discharged from physical therapy on two

occasions for failure to comply with the treatment regimen.  Again, the ALJ's discussion of this

issue was, in the court's view misleading.  Rather, it appears that plaintiff completed her first

course of physical therapy and discontinued the second after consultation with her physician

because it was exacerbating her symptoms.  While the ALJ's credibility assessment may, on its

face, appear to have record support, closer examination reveals that it was built upon a

foundation of sand.[4]

Having concluded that the ALJ's credibility determination is not supported by substantial

evidence, the court also concludes that the Commissioner's disability determination is not

supported by substantial evidence.  As noted above, given the nature of plaintiff's condition, this

case essentially turns on the question of whether plaintiff's allegations of disabling

symptomology are credible.  In the court's view, there is simply no substantial basis in the record

for discrediting plaintiff's allegations.  Plaintiff has consistently complained to her physicians

and therapists of severe and unrelenting pain and fatigue related to fibromyalgia.  (Tr. 219, 236-

38, 286-90, 347, 397)  She has tried physical therapy and numerous medications, including

_____

[4]Perhaps the only element of the ALJ's credibility assessment that withstands scrutiny is
the ALJ's observation that "the claimant was able to sit through her hearing of approximately 45
minutes in no apparent distress and betrayed no evidence of pain or discomfort while testifying."
(Tr. 22)  However, this observation certainly is not enough to save the ALJ's determination in
light of the numerous errors the ALJ made in assessing plaintiff's credibility.

muscle relaxers, Tylenol #3 and Darvocet, to ease her symptoms, but these measures appear to have done little to alleviate her pain.  Further, there is evidence in the record that plaintiff uses or has used a quad cane and a three-wheel scooter, which is consistent with her frequent complaints to her physicians of having ambulation difficulties.  (Tr. 452-53, 520)  In addition, contrary to the ALJ's determination, the evidence in the record reflects that plaintiff is substantially restricted in her activities of daily living.  The court also notes that Dr. Gerold reported in February of 2003, on a State of Michigan, Family Independence Agency form, that plaintiff was totally disabled.  (Tr. 115)[5]  In sum, the court finds that the record, as whole, substantiates plaintiff's allegations of disabling pain.

---

[5]The ALJ declined to give any weight to Dr. Gerold's opinion on the ground that he failed to provide any supporting explanation and he indicated that plaintiff had no medical need for assistance with meal preparation, grooming, housework, and other ADLs.  (Tr. 22)  It is true that Dr. Gerold did not provide any supporting explanation for his conclusion that plaintiff was totally disabled.  However, the record is unclear as to whether he reported that she did not need assistance with her ADLs.  There are two FIA forms in the record filled out by Dr. Gerold, identical in all respects except for the section regarding plaintiff's ADLs.  On the form at page 249 of the transcript, Dr. Gerold checked the "no" box in reference to whether plaintiff needed assistance with ADLs.  In the form at page 115 of the transcript, the check mark in the "no" box is crossed out and initialed.  Dr. Gerold then indicates that plaintiff does need assistance with various ADLs.  The Commissioner contends that the form at page 115 of the transcript should be disregarded, but without any evidence as to why this change was made, the court can only guess as to what Dr. Gerold meant.  If Dr. Gerold intended from the outset to indicate that plaintiff needed assistance with her ADL's, that would provide some support to his opinion that she is totally disabled.  The court also notes that the ALJ accorded significant weight to the opinion of the Disability Determination Services consultant, who found in March of 2002 that plaintiff was capable of performing medium work, even though he, like Dr. Gerold, provided no supporting explanation for his opinion.  (Tr. 20, 190-97)  The ALJ gave no explanation for this apparent contradiction.  While an ALJ is not ordinarily bound by a treating physician's statement that a patient is "disabled," it seems that at least some weight should be given that opinion when the only contrary medical opinion in the record is that of a physician who never examined the patient and who based his opinion on an incomplete medical record.

-16-

If a court determines that substantial evidence does not support the Commissioner's decision, "the court can reverse the decision and immediately award benefits only if all essential factual issues have been resolved and the record adequately establishes [the claimant's] entitlement to benefits." Faucher v. Secretary of Health and Human Services, 17 F.3d 171, 176 (6th Cir. 1994). Having found that this case turns on the question of plaintiff's credibility and that the record supports her allegations of disabling pain, the court is satisfied that there are no essential factual issues to be resolved and that the record adequately establishes plaintiff's entitlement to benefits. The court therefore recommends that this matter be remanded to the Commissioner for an award of benefits.

**V.  Conclusion**

For the reasons stated above, the court recommends that plaintiff's motion for summary judgment be **GRANTED**, that the Commissioner's cross-motion for summary judgment be **DENIED**, and that this matter be remanded for calculation of benefits.

The parties to this action may object to and seek review of this Report and Recommendation, but are required to act within ten (10) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and E.D. Mich. LR 72.1(d)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. Thomas v. Arn, 474 U.S. 140 (1985); Howard v. Secretary of HHS, 932 F.2d 505, 508 (6th Cir. 1991); United States v. Walters, 638 F.2d 947, 949-50 (6th Cir. 1981). The filing of objections which raise some issues, but fail to raise others with specificity, will not preserve all the objections a party might have to this Report and Recommendation. Willis v. Secretary of HHS, 931 F.2d 390, 401 (6th Cir.

-17-

1991); <u>Smith v. Detroit Fed'n of Teachers Local 231</u>, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this magistrate judge.

Within ten (10) days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be no more than 20 pages in length unless, by motion and order, the page limit is extended by the court. The response shall address each issue contained within the objections specifically and in the same order raised.

 s/Virginia M. Morgan
VIRGINIA M. MORGAN
Dated:  May 31, 2006          UNITED STATES MAGISTRATE JUDGE

---

**PROOF OF SERVICE**

The undersigned certifies that the foregoing Report and Recommendation was served upon counsel of record and the Social Security Administration via the Court's ECF System and/or U. S. Mail on May 31, 2006.

s/Jennifer Hernandez
Case Manager to
Magistrate Judge Virginia M. Morgan

-18-